IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRYAN DYNKA, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NORFOLK SOUTHERN | : | |
| RAILWAY CORP., *et al.*, | : | |
| Defendants. | : | No. 09-4854 |

**MEMORANDUM**

PRATTER, J.                                                                                                              JUNE 15, 2010

On November 21, 2009, Bryan Dynka sued the Norfolk Southern Railway Corporation ("Norfolk Southern") and the Chemtura Chemical Corporation ("Chemtura"), alleging that he was injured by toxic chemicals while employed as a railroad conductor by Norfolk Southern, and that his injuries were attributable to negligence on the parts of Norfolk Southern and Chemtura. Mr. Dynka's claim against Chemtura was dismissed on December 10, 2009.

Norfolk Southern has filed a Motion to Transfer this action to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the Motion to Transfer is granted.

**JURISDICTION**

The Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331, since Mr. Dynka's claim arises under federal law. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, inasmuch as Mr. Dynka is a citizen of Pennsylvania and Norfolk Southern is a citizen of Virginia, and the amount in controversy exceeds $75,000.

**FACTUAL AND PROCEDURAL BACKGROUND**

In March of 2008, Plaintiff Bryan Dynka was employed by Norfolk Southern as a conductor (Complaint at ¶¶ 8). Mr. Dynka alleges that on or about March 20, 2008, while working at a facility owned or operated by Chemtura, he was exposed to toxic chemicals and suffered severe damage to his respiratory system (*id.* at ¶¶ 8, 10).

On October 21, 2009, Mr. Dynka sued both Norfolk and Chemtura, alleging one count of negligence under the Federal Employees Liability Act ("FELA"), 45 U.S.C. §51 *et. seq.*, against each defendant. Mr. Dynka argued that Norfolk Southern and Chemtura had failed to provide a safe environment in which to work (*id.* at ¶¶ 9, 18).[1] On December 15, 2009, Norfolk filed a Motion to Transfer this action from the United States District Court for the Eastern District of Pennsylvania to the District Court for the Western District of Pennsylvania (Docket No. 10).

The parties agree that the Chemtura facility at which Mr. Dynka's accident occurred is located in the town of Westover, West Virginia (Motion to Transfer at ¶ 5; Response to Motion at ¶ 5). Westover – a suburb of Morgantown, West Virginia – is situated approximately 10 miles from Greene County, Pennsylvania, which is in Pennsylvania's Western District. Westover is just over 240 miles from Lancaster County (the westernmost county in Pennsylvania's Eastern District), and more than 300 miles from Philadelphia.[2]

---

[1] As noted above, the Plaintiff's claim against Chemtura has been dismissed (Docket No. 9). However, Norfolk Southern still has a cross-claim against Chemtura.

[2] "We may, of course, take judicial notice of geography." *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 344 (1952). The distances listed here are driving distances, and were calculated using Google Maps (www.maps.google.com, last accessed June 13, 2010), as is

Mr. Dynka resides in Lower Burrell, Pennsylvania and reports to work for Norfolk Southern in Brownsville, Pennsylvania (Motion to Transfer at ¶ 6). Both Lower Burrell and Brownsville are situated in the Western District of Pennsylvania. Six of the seven likely employee fact witnesses who have been identified by Norfolk Southern reside in the Western District (Memo in Support of Motion to Transfer at 11-13). The only Norfolk Southern witness who does not reside in the Western District is the company's Manager of Industrial Hygiene, Mark Dudle, who resides in Atlanta, Georgia (*id.* at 13 n.3). Neither party has identified the residential address of any Chemtura witness.[3]

In addition, all but one of the healthcare providers that treated Mr. Dynka's injuries are located in the Western District of Pennsylvania (*id*. at 14-15). The exception is the Ruby Memorial Hospital, where Mr. Dynka received his initial ministrations, which is affiliated with the University of West Virginia, immediately across the Monongahela River from Westover.[4]

**DISCUSSION**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

---

common practice. *See, e.g., Maynard v. Harrah's Entm't, Inc.*, 2010 U.S. Dist. LEXIS 45888 at *15, fn. 6 (E.D.N.Y., May 11, 2010) (taking judicial notice of distances calculated using Google Maps); *Hartford Life Ins. Co. v. Rosenfeld*, 2007 U.S. Dist. LEXIS 55819 at *24, fn. 5 (D.N.J., August 1, 2007) (same).

[3] Norfolk Southern has suggested that Chemtura's Plant Operations Manager, John Snodgrass, would probably be a material fact witness. While Norfolk Southern believes that it is "likely" that Mr. Snodgrass lives near Westover, it does not claim to know his residency with any certainty (Memo in Support of Motion at 13).

[4] Mr. Dynka does not dispute these facts in his Response to the Motion to Transfer (Docket No. 11).

28 U.S.C. § 1404(a). Federal district courts have broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) *(quoting Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The Court of Appeals for the Third Circuit has outlined several private and public interests for district courts to consider when deciding a motion to transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. Pa. 1995). The private interests include: (a) the plaintiff's forum preference as manifested in the original choice when the action was initiated; (b) the defendant's preference; (c) whether the claim arose elsewhere; (d) the relative convenience of the parties as indicated by their relative physical and financial conditions; (e) and the location of the witnesses, books and records, to the extent that the witnesses, books, or records may actually be unavailable for trial in one of the fora. *Id.* at 879 (citations omitted). The public interests include: (a) the enforceability of the judgment; (b) practical considerations that could make the trial easier, more expeditious, or less expensive; (c) the relative administrative difficulty in the two fora resulting from court congestion; (d) and the local interest in deciding local controversies at home. *Id.* at 879-80 (citations omitted).

FELA contains a choice-of-venue provision, which provides that actions arising under that statute may be brought in any district in which (1) the defendant resides; (2) the cause of action arose; or (3) the defendant conducts business at the time the action is brought. 45 U.S.C. § 56. This provision gives a substantial right to the plaintiff to choose the forum, a right which indeed should be treated with "strong deference." *See Coble v. Conrail*, 1992 U.S. Dist. LEXIS 12761 at *3 (E.D. Pa. Aug. 26, 1992); *Hohler v. Pennsylvania R. Co.*, 140 F. Supp. 487, 489

(W.D. Pa. 1956).  However, the presence of the choice-of-venue clause in the FELA does not preclude a Section 1404(a) transfer.  *Ex parte Collett,* 337 U.S. 55, 60 (1949).

In this case, the strong deference that the Court gives to Mr. Dynka's choice of forum is outweighed by the substantial burden which would be placed on the witnesses if this case were to proceed here in the Eastern District.  As noted above, the vast majority of likely fact witnesses live in the Western District.  In addition, Mr. Dynka's injuries arose in West Virginia, and Mr. Dynka was first treated in a West Virginia hospital.  The location of witnesses and the proximity the relevant West Virginia sites to the Western District of Pennsylvania militate in favor of transfer to that District.

This case resembles *Kramer v. Consolidated Rail Corp.*, No. 97-1102, 1997 U.S. Dist. LEXIS 5913 (E.D. Pa. Apr. 24, 1997), in which our colleague Judge Pollak granted a defendant's motion to transfer a FELA case from the Eastern District of Pennsylvania to the Middle District.  The *Kramer* opinion emphasized the fact that the majority of likely witnesses resided in the Middle District.  Here, as in *Kramer*, the plaintiff's choice of venue is "markedly over-balanced" by such practical considerations.  *Id.* at *3-4.  Good sense will prevail in this instance.

**CONCLUSION**

Norfolk Southern's Motion to Transfer this case to the United States District Court for the Western District of Pennsylvania is granted.  An order to this effect follows.